## GULFPORT COTTON OIL, FERTILIZER & MANUFACTURING CO. *v.* UNDERFEED STOKER CO.

1. It was not error to exclude from evidence a copy of a record purporting to show the daily consumption of coal in the operation of certain boilers, although the original records had been lost, where there was no evidence as to who made the original records nor as to their correctness.
2. It not being insisted that time was of the essence of the contract sued on, letters merely complaining of delays in shipping certain material and in the commencement of the work of installing certain machinery were immaterial and were properly repelled as evidence.
3. Other letters written after the installation of the machinery, which it was alleged did not fulfill the terms of the guarantees in the contract, were properly excluded as immaterial.
4. While the contract sued on provided for certain tests of the machinery furnished, as necessary to determine whether the express warranties of the machinery had been fulfilled, and the petition alleged strict compliance with the contract, it was competent to show by evidence that the particular test contemplated by the contract had been waived and another substituted; and the charge of the court in reference to the test or waiver thereof; and the making of a different test from that contemplated in the contract, was not erroneous as being unauthorized by the pleadings and the evidence.
5. Under the evidence in this case the court did not err in instructing the jury that they might determine whether the tests provided for in the contract had not been waived, from the fact that a certain payment was made by the defendant without requiring the specific tests provided for in the contract.
6. The requests to charge, so far as they are pertinent and correct statements of law, were sufficiently covered by the general charge. No error

is shown in any of the rulings of the court complained of, and there is sufficient evidence to support the verdict.

SEPTEMBER 30, 1910.

Action upon contract. Before Judge Pendleton. Fulton superior court. July 21, 1909.

The Underfeed Stoker Company of America (hereinafter called the Stoker Company) brought suit against the Gulfport Cotton Oil, Fertilizer and Manufacturing Company (hereinafter called the Gulfport Company), alleging substantially as follows: On the 31st day of January, 1905, the Stoker Company made a contract with the Gulfport Company by which the Stoker Company agreed to furnish to the Gulfport Company certain material and labor necessary for the complete equipment of two horizontal return tubular boilers at the plant of the Gulfport Company, Gulfport, Mississippi, with Jones Underfeed Mechanical Stokers, in accordance with certain specifications in the contract named. Under the original agreement the boilers to be equipped with stokers were the boilers owned and operated by the Gulfport Company in connection with its cotton oil and fertilizer plant. After the execution of said contract the Gulfport Company decided that it did not wish the boilers used in connection with its cotton oil plant equipped with the stokers, but desired to substitute the boilers used in its fertilizer plant; and by agreement of parties this substitution was made. In consequence of the substitution it became necessary to use additional material, which it is alleged the Stoker Company furnished by agreement, the Gulfport Company agreeing to pay the value of the extra material in addition to the sums stipulated to be paid under the contract. Petitioner alleged performance of the contract upon its part. The contract sued on was attached to the petition as an exhibit. In the contract, under the head of "Guarantees," the Stoker Company made certain express warranties, which, so far as material to the case, are as follows:

"Paragraph 1. Economy. The Contractors guarantee that by the proper use of the Stokers they will effect a saving of not less than 10 per cent. in fuel bills over the results that are regularly obtained in the ordinary running of the plant by hand firing on common grates.

"Paragraph 2. Capacity. The Contractors guarantee that they can increase the rated capacity of the boilers to be equipped at least 25 per cent. beyond rated capacity; 10 square feet of heating

surface in water tube boilers, 12 square feet of heating surface in return tubular boilers, or 7½ square feet of heating surface in internal furnace boilers, to constitute 1 horse-power.

"Paragraph 3. Smoke Abatement. The Contractors guarantee to practically abate the smoke nuisance, unless boilers be forced greatly beyond capacity, or when fires are being started or cleaned.

"Paragraph 4. All guarantees herein made are conditioned on the operation of the stokers in accordance with Contractors' printed and written instructions; and the purchasers agree so to operate them."

The contract also made this provision:

"Paragraph 6. The evaporation tests necessary to determine the guarantees herein named shall be made upon completion of installation by the representatives of the Contractors and Purchasers, the boilers being operated at or beyond rated capacity, the details of tests being arranged between the representatives above named previous to the installation of the stokers."

It is provided that payment should be made as follows:

"Paragraph 8. One third upon delivery of stokers, dead plates, blower, and engine; one third upon completion of installation and fulfillment of guarantees herein made by the Contractors; the remaining third to become due thirty (30) days thereafter; settlement to be made upon completion of installation and fulfillment of guarantees, by the Purchaser's note of acceptance."

Other material portions of the contract are as follows:

"Paragraph 9. It is understood and agreed that the installation of the stokers shall commence within thirty (30) days from time of delivery, and that the work shall be proceeded with continuously until completed. If through no fault of the Contractors they are not permitted to commence and continue the installation as above stated, the final payment shall be due and payable ninety (90) days from date of delivery.

"Paragraph 10. It is mutually agreed by each of the parties hereto that the stokers shall be installed and operated in accordance with the above agreements, and in accordance with the plans and specifications of Contractors, which they will furnish free of charge."

In its plea and answer the Gulfport Company denied compliance with this contract upon the part of the Stoker Company, alleged

a failure to meet the express warranties set forth in that part of the contract headed "Guarantees," denied that tests had been made as stipulated in the contract, and pleaded that by reason of the Stoker Company's failure to carry out its contract and guarantees the defendant had been compelled to shut down its mill for a certain time, and during a stated period was unable to make fertilizers, and could not fill orders which it had on hand, in consequence of which it had been injured and damaged in a stated sum, for which it asked judgment.

The jury returned a verdict for the plaintiff. The defendant made a motion for a new trial, which being overruled, it excepted.

*Wimbish, Watkins & Ellis,* for plaintiff in error.

*Rosser & Brandon,* contra.

BECK, J. (After stating the foregoing facts.)

1. The court below properly refused to allow the defendant to introduce in evidence, as a part of the testimony of the witness G. S. Jennings, a statement showing the date on which the boilers were in use, the number of boilers in use, and the amount of coal consumed, although this statement was identified by the witness as having been made by him and taken from the records of the defendant company, which records the witness testified had been destroyed, and although it was shown by him and by others that a daily record had been kept of the amount of coal that had been consumed, and the statement offered in evidence was taken from such record; for it appears that no witness testified as to who made these records or as to their correctness.

2. It is not insisted that time was of the essence of the contract sued on in this case; and letters merely complaining of delays in shipping certain material and in the commencement of the work of installing certain machinery were immaterial and were properly repelled as evidence.

3. The exclusion of various other letters than those referred to in the foregoing is complained of; but we are of the opinion that the court below properly held them to be inadmissible. It was unnecessary for the defendant, in order to establish the defense set up in this case, to show that it had given notice of defects in the machinery installed by the plaintiff, in respect to those qualities covered by the express warranties set forth in the contract under the head of "Guarantees." If the machinery was actually defective

in those respects and failed to measure up to those guarantees, that was a matter which could be shown by competent evidence, and not by letters written by the party complaining of such defects to the party furnishing and erecting the machinery.

4. While the contract expressly provides for certain tests of the machinery as necessary to determine the guarantees stipulated in the contract, and in the petition it is alleged that the plaintiff "did install and operate the two Jones Underfeed Stokers described [this being the machinery in controversy], in connection with the boilers used in the fertilizer plant of the defendant, in strict accordance with agreement Exhibit 'A' [the contract sued on] as modified as aforesaid, and in strict accordance with the specification items furnished by the petitioner," we are of the opinion that it was competent for the plaintiff to show that the tests of the machinery contemplated in the written contract had been waived or that another test had been agreed upon and substituted for the particular test contemplated by both parties when the contract was executed; and there was evidence in this case authorizing the jury to find that the tests originally intended by both parties to be made had been waived, and that another test, considered sufficient by the plaintiff and by the authorized agent of the defendant, had been substituted therefor. The test stipulated in the contract was but a means of ascertaining and determining whether or not the machinery furnished by the plaintiff measured up to and fulfilled the requirements of the express warranties. The jury could find, under the evidence in the case, that that particular test was not the only one from which it could be determined whether the guarantees in the contract were fulfilled. It was competent for the defendant, before or during the installation of the machinery, to waive that particular test and rely upon other means of determining whether the machinery was such as it was warranted to be in those respects covered by the guarantees; and if the evidence showed that the tests had been waived, or another test substituted therefor, and that the guarantees in respect to those matters covered thereby had been fulfilled, the plaintiff's allegation of compliance with the contract would be sustained. Under the pleadings and the evidence in the case, the charges of the court in reference to the tests and the waiver of tests were authorized and were proper.

5. The court charged the jury as follows: "These guarantees might be waived by the conduct of the defendant's officers. If they paid a part of the second payment before the fulfillment of the guarantee, you would determine whether by so doing they did waive such fulfillment." It is contended that this was error upon the following grounds: (a) Because there was no pleading or evidence of any waiver. (b) Because a payment for one of the stokers, which was the payment made in this case, would not constitute a waiver of test on the other stoker, defendant having the right to pay for one stoker if it saw proper and retain the amount contracted to be paid for the other stoker until plaintiff had complied with its contract with reference to testing such second stoker.

While in this charge the court used the expression, "these guarantees might be waived," we are of the opinion that the court had reference merely to the tests provided for in the contract. This is made manifest when we consider that portion of the charge immediately preceding the portion excepted to. The extract from the charge excepted to, together with what immediately precedes it, reads as follows: "In making these stoker tests the boilers must be operated at or beyond the rated capacity, and the test must be made on both boilers. These requirements, however, can be waived by the defendant. If the plaintiff's agent and Mr. Van Winkle, the president of the defendant company, or any other agent of the defendant company who had authority so to do, agreed that the test on one boiler should determine the guarantees with reference to both boilers, that would waive the right to have both boilers tested; and if they agreed that the boilers, in making the test, should be operated below the rated capacity, that would waive the requirements that they should be operated at or beyond the rated capacity, as to both parties. These guarantees might be waived by the conduct of the defendant's officers. If they paid a part of the second payment before the fulfillment of the guarantee, you would determine whether by so doing they did waive such fulfillment." And immediately after the instructions contained in the excerpt complained of, the jury were told by the court that they could only find for the plaintiff in case it had complied with the guarantees in the contract, and they were charged in express terms that they could not find for the plaintiff unless the guarantees had been complied with. And it will be observed that movant so

construed the charge in stating the grounds upon which counsel contended that the instructions complained of were erroneous. In fact that portion of the exception to the charge, wherein counsel attempts to specially point out the error in the portion of the charge complained of, would not be applicable to the charge thus criticised, unless we treat the expression, "these guarantees," as referring to the "tests," as appears from a reading of the criticism upon the charge. Treating the expression, "these guarantees" as referring to the tests, we do not think the charge was error. There was evidence from which the jury might have found that when the payment to which the court referred in this part of the charge was made, it was impossible to carry out the plan for making the tests as contemplated in the contract; and inasmuch as the defendant had made a payment without directing the application of that payment to either particular stoker of the two installed by the plaintiff, and at a time when the tests could not be made of both of the stokers furnished, the jury would have had the right to say, from the fact of the payment, whether or not there had been a waiver of the right on defendant's part to a carrying out of the tests as provided in the contract.

6. The charge of the court in this case fully and fairly submitted to the jury the issues proper for their consideration. The requests to charge, so far as they were legal and pertinent, were sufficiently covered by the general charge, and there was sufficient evidence to support the verdict.

*Judgment affirmed. All the Justices concur.*